## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **CARLTON MICHAEL GARY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **NO. 5:15-CV-259-CAR-TQL** |
| **VS.** | : | |
| | : | |
| **Warden BRUCE CHATMAN,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| ———————————————— | : | |

## ORDER AND RECOMMENDATION

*Pro se* Plaintiff Carlton Michael Gary, a prisoner currently incarcerated at the Georgia Diagnostic and Classification Prison in Jackson, Georgia, has filed a civil rights complaint and amended complaint pursuant to 42 U.S.C. § 1983. Pursuant to the Court's previous orders, Plaintiff has now paid the required initial partial filing fee. Because Plaintiff is a prisoner "seeking redress from a governmental entity or [an] officer or employee of a governmental entity," the Court is required to conduct a preliminary screening of his complaint. *See* 28 U.S.C. § 1915A(a). Having done so, the undersigned **RECOMMENDS** that the following claims be **DISMISSED without prejudice:** (1) Plaintiff's claims regarding punitive isolation; (2) Plaintiff's claims regarding cleanliness and sanitation in his living area (including alleged lack of pest control); (3) claims regarding his medical treatment, except those claims against Defendant Fowlkes; (4) claims that Defendants failed to assist him in retrieving his medical records and mishandled his medical grievances; and (5) claims against the Georgia Department of

Corrections.  The undersigned also **RECOMMENDS** that Plaintiff's motion for temporary restraining order (ECF No. 12) be **DENIED.**

The following claims shall proceed for further factual development: (1) denial of visitation claims against Defendants Dendy, Eutsey, and Chatman; (2) denial of out-of-cell time against Defendant Eutsey; and (3) medical deliberate indifference claims against Defendant Fowlkes.  The undersigned declines to address any of Plaintiff's state law claims at this time.

## PRELIMINARY SCREENING

### I.      Standard of Review

When conducting preliminary screening under 28 U.S.C. § 1915A, the Court must accept all factual allegations in the complaint as true.  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).  *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Id.* (internal quotation marks omitted).  Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact."  *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted).  The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless."  *Id.* (internal quotation marks omitted).  A complaint fails to state a claim if it does not include "sufficient factual

2

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original).  In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law.  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).   If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II.   Plaintiff's Claims

Plaintiff's claims arise from his incarceration in the Georgia Diagnostic and Classification Prison ("GDCP").   According to Plaintiff's Complaint and Amended Complaint, various Defendants have denied Plaintiff his constitutional rights by (1) unreasonably and arbitrarily denying him visitation with his wife and daughter; (2) forcing him to live in an unclean and unsanitary living environment; (3) denying him out-

3

of-cell recreation time; (4) providing him with constitutionally inadequate medical care; and (5) allowing the corrections officers' air conditioning system to vent hot air and gases into his cell.  (*See* Am. Compl. 15-33, ECF No. 10.)  Plaintiff seeks declaratory relief, preliminary and permanent injunctions restoring his visitation privileges, a jury trial, costs of litigation, and any other relief the Court deems appropriate for these alleged violations of his constitutional rights.  *Id.* at 6, 34-35.

A. Denial of Visitation Privileges

Plaintiff first contends that Defendants have been unconstitutionally denying him visitation with his wife and daughter.  According to Plaintiff, his wife and daughter were wrongfully accused of passing marijuana to Plaintiff during a visit.[1]  Plaintiff asserts that all charges against his wife and daughter have been dismissed, but Defendants have arbitrarily and unfairly refused to reinstate visitation privileges.  (Am. Compl. 18, 20.)

---

[1]Plaintiff also suggests that the Georgia Department of Corrections Office of Investigations and Compliance, Inmate Affairs Unit, may have some liability for failing to properly investigate the marijuana possession, and he attempts to name the department as a Defendant.  (Am. Compl. 14.)  Such claims fail for several reasons.  First, the Georgia Department of Corrections is not a "person" amenable to a suit for money damages under § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) (states and governmental entities that are considered "arms of the state" are not considered "persons" capable of being sued under § 1983).  Second, Plaintiff has failed to identify who in the Department violated his constitutional rights.  *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation).  Third, Plaintiff has failed to identify what constitutional right the Department's actions (or lack thereof) implicated, since "a private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another."  *Otero v. U.S. Attorney Gen.*, 832 F.2d 141, 141 (11th Cir. 1987).  Accordingly, it is **RECOMMENDED** that Plaintiff's claims against the Georgia Department of Corrections be **DISMISSED without prejudice.**

Prisoners do not enjoy an absolute right to visitation; rather, "such privilege . . . [is] subject to the discretion of prison authorities, provided the visitation policies of the prison meet legitimate penological objectives." *Evans v. Johnson*, 808 F.2d 1427, 1428 (11th Cir. 1987) (citing *Lynott v. Henderson*, 610 F.2d 340, 342 (5th Cir. 1980)).  Thus, while the temporary withdrawal of visitation privileges as a means of effecting prison discipline does not violate a prisoner's constitutional rights, the withdrawal of all visitation privileges may give rise to a constitutional claim if the sanction is "permanent or for a much longer period or if it were applied in an arbitrary manner to a particular inmate." *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003).  A prisoner may therefore state a § 1983 claim if he alleges that a prison official arbitrarily denied him of all visitation privileges for a significant or extended period of time.  *See id.*

In this case, Plaintiff has asserted that he has been denied visitation with his wife and daughter for over two years—even after charges were dismissed against them—and that Defendants refuse to reinstate even no-contact visits with his wife.  (Am. Compl. 17.) Plaintiff further asserts that visitation status for a female friend of a white prisoner was reinstated even though the female friend "had been caught directly passing/possessing narcotics on more than one occasion" and had been repeatedly suspended or removed from the visitation list, and the white prisoner "had been foiled in an escape attempt."  *Id.* at 18.  Plaintiff has further alleged that Defendants' visitation restrictions were made on the basis of Plaintiff's (and his wife's and daughter's) race.  *Id.*[2]  Construing Plaintiff's

---

[2]Plaintiff also suggests that the denial of visitation privileges constitutes an equal protection claim.  "The Equal Protection Clause of the Fourteenth Amendment requires

allegations liberally, as the Court must at this stage, the undersigned concludes that Plaintiff's claims regarding the denial of visitation privileges should proceed for further factual development.   It is difficult to tell from Plaintiff's complaint and amended complaint which Defendants personally participated in this denial; but Plaintiff specifically mentions only Defendants Dendy, Chatman, and Eutsey.  (*See, e.g.,* Compl. 25, ECF No. 1; Am. Compl. 15; *see also* Mot. TRO 4, ECF No. 12.)  Plaintiff's denial-of-visitation claims shall therefore proceed only as to those Defendants.

> B.  Placement in Punitive Isolation

Plaintiff alleges that after he and his family were accused of the marijuana transaction, he was confined in "punitive isolation" for 74 days and was never afforded a segregation hearing or given a disciplinary report.  (Compl. 15.)  To the extent Plaintiff is attempting to assert a due process claim, these facts, standing alone, fail to do so.

It is well-settled that the Due Process Clause of the Fourteenth Amendment protects against deprivations of "life, liberty, or property without the due process of law."  U.S. Const. amend. XIV.  In order to establish a procedural due process claim under 42

---

the government to treat similarly situated people alike."  *Hernandez v. Fla. Dep't of Corrs.*, 281 F. App'x 862, 867 (11th Cir. 2008) (per curiam).  To establish an equal protection claim, a prisoner must allege that he is similarly situated with other prisoners who received more favorable treatment and that his discriminatory treatment was based on some constitutionally protected interest, such as race.  *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001).  To the extent Plaintiff's allegations regarding his visitation can be construed as raising an equal protection claim, these claims should also proceed for further development.  Plaintiff occasionally uses the phrase "similarly situated" elsewhere in his complaint and amended complaint, but he does not appear to raise any other potential equal protection claims as he fails to allege any facts illustrating how others were similarly situated or how any alleged disparate treatment was based on some constitutionally protected interest.

U.S.C. § 1983, a plaintiff must show that a person acting under color of state law deprived him of a constitutionally protected liberty or property interest without constitutionally adequate process. *See, e.g., Foxy Lady, Inc. v. City of Atlanta*, 347 F.3d 1232, 1236 (11th Cir. 2003) (per curiam).

The Due Process Clause "does not directly protect an inmate from changes in the conditions of his confinement" or create a constitutionally-protected interest "'in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters.'" *Chandler v. Baird*, 926 F.2d 1057, 1060 (11th Cir.1991) (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)). Thus, to state a due process claim, a prisoner must allege more than that he has been confined in segregation without due process. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). Due process protections are only evoked when the change in a prisoner's conditions is so severe that it (1) essentially exceeds the sentence imposed by the court of conviction or (2) imposes "atypical and significant hardship" on the prisoner in relation to the ordinary incidents of prison life. *Id.* at 484.

In this case, Plaintiff has not alleged sufficient facts to show that either circumstance described in *Sandin* applies. A prisoner can show that his liberty interests are implicated if the more restrictive conditions to which he is subjected in segregation "are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time." *Earl v. Racine Cnty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013) (per curiam). Plaintiff's 74-day period of confinement in segregation is relatively brief and is within "the range of conditions that do not violate a protected

interest." *See Wilson v. Unknown Budgeon*, 248 F. App'x 348, 351 (3d Cir. 2007) (per curiam) (sanction of six months confinement in disciplinary segregation would not violate implicate protected liberty interest as defined by *Sandin*). Nor has Plaintiff alleged facts that would show the conditions he experienced while in segregation were particularly harsh or "present[ed] a dramatic departure from the basic conditions" of his sentence. *Compare Sandin*, 515 U.S. at 476, 485 (placement in segregation for term of thirty days did not give rise to protected liberty interest) *with Wallace v. Hamrick*, 229 F. App'x 827, 830-31 (11th Cir. 2007) (per curiam) (placement in administrative segregation for 28 days without hot water, adequate ventilation, or opportunity to exercise while awaiting disciplinary hearing supported due process claim because conditions may have constituted "an atypical and significant hardship 'in relation to the ordinary incidents of prison life'").

Absent some showing that the change in conditions Plaintiff experienced in segregation essentially exceeded his original sentence or that his confinement in segregation caused him to experience an atypical and significant hardship, Plaintiff has failed to state a due process claim upon which relief may be granted. *See, e.g., Hernandez v. Velasquez*, 522 F.3d 556, 563 (5th Cir. 2008) (per curiam) (prisoner on "lockdown" status for twelve months in "shared cell . . . with permission to leave only for showers, medical appointments, and family visits" failed to allege deprivation of cognizable liberty interest); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (fifteen months of administrative segregation not atypical when "inmates in a myriad of circumstances [would] find themselves exposed to the [same] conditions to which [the

8

inmate] was subjected"); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (117 days in administrative segregation due to lack of bed space did not implicate state-created liberty interest under *Sandin*).   Accordingly, the undersigned **RECOMMENDS** that to the extent Plaintiff seeks to raise a due process claim based on his punitive isolation, such claim should be **DISMISSED without prejudice.**

### C.   Conditions of Confinement

Plaintiff also appears to challenge various conditions of confinement in the prison. Put simply, "the Constitution does not mandate comfortable prisons."   *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).   Rather, to state a conditions-of-confinement claim, a prisoner must show that the deprivations he suffers are objectively and sufficiently "serious" or "extreme" so as to constitute a denial of the "minimal civilized measure of life's necessities."   *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010). This standard is only met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks omitted), or if society "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *Helling v. McKinney*, 509 U.S. 25, 36 (1993).   With these principles in mind, the undersigned addresses Plaintiff's conditions-of-confinement claims as follows:

#### i.  *Cleanliness of Living Area*

Plaintiff first claims that his living unit and other areas are not properly cleaned and sanitized.  (Am. Compl. 20.)  He further states that the areas do not have appropriate

pest control.  *See id.* at 23.  Plaintiff also alleges that he is not provided with sufficient cleaning tools or supplies to ensure his living space is clean.  *Id.*

Plaintiff has not provided any specific factual details to allow the Court to conclude that the conditions in which he is confined provide an unreasonable risk to Plaintiff's health and safety or that they violate contemporary standards of decency so as to state an Eighth Amendment claim.  *Cf., e.g., Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (per curiam) (inmate stated constitutional claim where he alleged the floor of his cell "was covered with water, the sink and toilet did not work, and the walls were smeared with blood and feces"); *see also Moulds v. Bullard*, 345 F. App'x 387, 393 (11th Cir. 2009) (per curiam) (prisoner's conditions of confinement claims too vague to state an Eighth Amendment violation based on "unsanitary conditions" where prisoner "did not state any details that would indicate how 'extreme' those conditions were, and did not contend that he personally faced a health risk as a result of any of these conditions").  In fact, Plaintiff acknowledges in his Amended Complaint that he was permitted to thoroughly clean and sanitize his living area on July 11, 2015, and he also states that corrections officers sweep and mop the area regularly.  (Am. Compl. 21; *see also* Compl. 18 (corrections officers sweep and mop "sometime every other night").)  Plaintiff further states that he is provided at least some cleaning materials to clean his cell on a regular basis.  (Am. Compl. 23; Compl. 19 (receives "a small Styrofoam cup of beach, disinfectant, floor stripper twice a week".)  And although Plaintiff states that "roaches are rampant" and "rats are regular," he only makes specific allegations about these alleged infestations in the office areas of the prison.  (*See* Compl. 19.)  Plaintiff further admits

that there has been "sporadic spraying of a few areas" of the prison, (Am. Compl. 23), and he does not describe how such pests affect his living area or otherwise show an "extreme" infestation. *See Brown v. Withrow*, 985 F.2d 559 (6th Cir. 1993) (unpublished) (presence of rats, roaches, and ants in cell was not below constitutional standard). Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Eighth Amendment claims regarding the cleanliness and pest control in his living area be **DISMISSED without prejudice.**

### ii. "Commercial Cooler" Claim

Plaintiff next alleges that on July 27, 2011, a portable air conditioner was installed in a security booth at the prison for the benefit of corrections officers. (Am. Compl. 23.) Plaintiff states that the air conditioner was not properly vented to the outside; instead, the air conditioner vents hot air and gases into the area in which Plaintiff is housed, increasing the heat and humidity in Plaintiff's cell. *Id*. at 32-33. Plaintiff states the additional heat from the unit "can be smelled," and he has "rashes and itch only when [the unit] is on." *Id.* at 24. Plaintiff further summarily contends that the unit "is a danger to [his] already high blood pressure and related health problems." *Id.*

Even taking as true Plaintiff's allegation that use of the air conditioning unit raises the temperature in his cell, Plaintiff has failed to state a constitutional claim. Plaintiff has not shown that the conditions in his cell were unconstitutional even with the increased heat, and he offers no specific facts to demonstrate that use of the cooling unit put his health at serious risk. *See, e.g., Chandler v. Crosby*, 379 F.3d 1278, 1297 (11th Cir. 2004) (heat in prison was not considered "unconstitutionally excessive" where daytime

11

temperatures were generally between 85 and 86 degrees and nighttime temperatures were approximately 80 degrees); *Shabazz v. Barnauskas*, 790 F.2d 1536, 1538 (11th Cir. 1986) (per curiam) (dismissing Eighth Amendment claim because plaintiff's allegation that defendants forced him to shave did not pose a risk of serious harm, even though shaving caused "bleeding, inflammation, irritation, ingrowing of hairs, infection, purulence, and pain"); *see also Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) (per curiam) (affirming dismissal of inmate's Eighth Amendment claims in part because inmate's physical injuries—which included stiffness, lower back pain, severe headaches, vomiting, and constipation—did not indicate that "the challenged prison conditions constituted 'an unreasonable risk of serious damage' to [the inmate's] health or safety"). As presently alleged, the conditions about which Plaintiff complains appear uncomfortable at most, and "a prisoner's mere discomfort, without more, does not offend the Eighth Amendment." *Chandler*, 379 F.3d at 1295. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Eighth Amendment claims regarding the "commercial cooler" be **DISMISSED without prejudice.**

### iii.  *Out-of-Cell Time*

Plaintiff next alleges that Defendant Eutsey has denied him out-of-cell time for exercise and recreation for the last five years. (Am. Compl. 23.) Plaintiff contends the removal was arbitrary, unexplained, and in violation of GDC policy, which requires at least 2.5 hours of out-of-cell recreation per week. *Id.* at 25. In some cases, denial of out-of-cell recreation for an extended period of time may support an Eighth Amendment claim. *Compare Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) (seven weeks

without out-of-cell recreation unconstitutional because inmate did not have sufficient room for any type of recreation in his cell) *with Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997) (no violation when inmate confined for seventy days was "able to engage in exercise in his cell such as push-ups, sit-ups, jogging in place, and step-ups").  At this early stage, the undersigned finds Plaintiff's allegations sufficient to permit his claims that Defendant Eutsey denied him out-of-cell time to proceed for further factual development.

In sum, Plaintiff has not shown that the conditions of his confinement have deprived him of the "minimal civilized measure of life's necessities" regarding the cleanliness of his cell or the use of the "commercial cooler."  *Rhodes*, 452 U.S. at 347. Accordingly, the undersigned **RECOMMENDS** that those Eighth Amendment claims be **DISMISSED without prejudice.**  The undersigned will, however, permit Plaintiff's denial of out-of-cell time claim against Defendant Eutsey to proceed for further factual development.

### D. Claims against Medical Providers

Plaintiff also appears to assert claims against various Defendants for failure to provide adequate medical care in violation of the Eighth Amendment to the United States Constitution.  More specifically, Plaintiff contends that Defendant Dr. Fowlkes, the prison's medical director, failed to provide him constitutionally adequate medical care; that Defendant Dr. Lewis, the Medical Director for the Georgia Department of Corrections Office of Health Services Utilization Management, failed to properly handle

his medical grievances; and that Defendant Butts, the prison's health services administrator, failed to assist him in obtaining his medical records.

### i. Deliberate Indifference to Serious Medical Needs

A prisoner who demonstrates that a prison official was deliberately indifferent to his serious medical needs can state a claim under the Eighth Amendment. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Id.* at 1243. A plaintiff must first "set forth evidence of an objectively serious medical need," and must also "prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.* In other words, prison officials must both "know of and then disregard an excessive risk to the prisoner." *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam). "Mere negligence in diagnosing or treating a medical condition, or even medical malpractice, does not state an Eighth Amendment claim of medical mistreatment." *Id.* Moreover, "[w]hether prison officials should have employed additional diagnostic techniques or care is an example of medical judgment and not an appropriate basis for § 1983 liability." *Id.*

Plaintiff has adequately alleged the existence of a "serious medical need," at least for purposes of preliminary screening. With one exception, however, Plaintiff has not alleged sufficient facts to allow the Court to determine that the named Defendants acted with "deliberate indifference" to that need. To establish "deliberate indifference," Plaintiff must show that a Defendant had (1) subjective knowledge of a risk of serious harm, and (2) disregarded that risk (3) by conduct that is more than gross negligence. *See*

14

*McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *Townsend v. Jefferson County*, 601 F.3d 1152, 1158 (11th Cir. 2010).

As to Defendant Fowlkes specifically, the undersigned must permit Plaintiff's claims to proceed.  Plaintiff alleges that Defendant Fowlkes repeatedly prescribed Plaintiff a pain medication to which Plaintiff was allergic, despite being informed of Plaintiff's allergy, and refused to provide him any other pain medication even though other doctors had prescribed such drugs.  (*See, e.g.,* Am. Compl. 28-29.)  These allegations may be sufficient to state an Eighth Amendment claim.  *See, e.g., Benson v. Gordon County*, 479 F. App'x 315, 319 (11th Cir. 2012) (per curiam) (prisoner stated claim against nurse who intentionally withheld prescribed pain medication from prisoner for days despite knowing prisoner was in pain); *Lair v. Oglesby*, 859 F.2d 605, 606 (8th Cir. 1988) (per curiam) (prisoner's allegation that physician continued to prescribe drug after prisoner advised him of allergic reaction to drug stated Eighth Amendment claim).

As to any remaining Defendants against which Plaintiff seeks to bring a medical deliberate indifference claim, however, Plaintiff's allegations show he received ample medical treatment, and he therefore fails to state a constitutional claim.  Plaintiff alleges that on June 9, 2015, he sent a letter and sick call request to Defendant Fowlkes complaining of "several chronic and recent problems," including "penile bleeding, painful and frequent urination, pain from a hernia operation, and feet pain."  (Am. Compl. 25.)  On July 6, 2015, Plaintiff was seen by a physician assistant at the prison who put Plaintiff on "name brand medications," ordered blood and urine tests, and arranged for Plaintiff to be seen by his hernia surgeon and a urologist at Augusta State

Medical Prison ("ASMP"). Plaintiff was seen by his hernia surgeon and two urologists at ASMP on July 21, 2015, and a prostate exam was performed. Plaintiff was also prescribed medication, and a CT-scan and "other services" were ordered, though Plaintiff had not received those tests as of the filing of his amended complaint. (Am. Compl. 27.) Plaintiff was also seen by a nurse upon his return to GDCP in late July, and he saw a nurse practitioner at GDCP on August 6, 2015.

Even if Plaintiff did not receive all the treatment he desired, Plaintiff is not constitutionally entitled to any form of diagnostic test or treatment of his choosing. *See, e.g., Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). Plaintiff's allegations demonstrate that prison officials (with the possible exception of Defendant Fowlkes) were not deliberately indifferent to any serious medical needs Plaintiff may have exhibited. Thus, to the extent Plaintiff seeks to raise a constitutional claim against any prison official other than Defendant Fowlkes, Plaintiff's allegations fail to state a constitutional claim.[3]

---

[3] Plaintiff has also failed to raise a constitutional claim against any named Defendant in his or her supervisory capacity. Supervisors can only be held liable under § 1983 if they personally participated in the allegedly unconstitutional conduct or if there is a causal connection between their actions and the alleged constitutional violation. *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam). A causal connection can be established if the plaintiff shows

In sum, Plaintiff's claims for medical deliberate indifference fail against all Defendants other than Defendant Fowlkes.  Plaintiff's claims against Defendant Fowlkes shall therefore proceed for further factual development, but the undersigned **RECOMMENDS** that any remaining medical deliberate indifference claims be **DISMISSED without prejudice.**

### ii.  Medical Records Claims

Plaintiff also complains that various prison officials, to specifically include Defendant Butts, lost his request for medical records related to his surgery and have not helped him retrieve those records.  (Am. Compl. 29-31.)  Prison officials' failure to provide Plaintiff with copies of his medical records "does not violate any right secured by the Constitution or laws of the United States."  *Clay v. City of San Francisco*, No. C 97-307 SI (PR), 1997 WL 142800, at *1 (N.D. Cal. Mar. 14, 1997).  As such, Plaintiff has

---

(1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.*  "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous."  *Id.* (internal quotation marks omitted). Plaintiff does not allege that any of the supervisory officials identified in his complaints participated in any medical decision-making, had any customs or policies regarding medical care, directed any of his subordinates to act unlawfully, or knew they were doing so and failed to stop them.  As such, to the extent Plaintiff's allegations can be construed as raising such claims, the undersigned **RECOMMENDS** they be **DISMISSED without prejudice.**

failed to state a § 1983 claim and the undersigned **RECOMMENDS** that these claims be **DISMISSED.**

### iii.   *Mishandling of Medical Grievances*

Plaintiff finally alleges that Defendant Lewis signed and decided Plaintiff's health care grievances.  (Am. Compl. 31.)  To the extent that Plaintiff seeks to hold Defendant Lewis liable for improperly handling or deciding those grievances, Plaintiff has failed to state a constitutional claim.  Prisoners have no constitutionally-protected liberty interest in accessing a prison's grievance procedure.  *Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (per curiam); *Thomas v. Warner*, 237 F. App'x 435, 438 (11th Cir. 2007) (per curiam) ("Plaintiff's allegations that prison officials failed to comply with the prison's voluntary grievance procedures does not state a due process claim.").  Accordingly, the undersigned **RECOMMENDS** that any claims related to the mishandling of the grievance procedure be **DISMISSED without prejudice.**

## III.    State Law Claims

In addition to his § 1983 claims, Plaintiff mentions that he is also bringing state law claims.  As a rule, a district court will decline to exercise supplemental jurisdiction over state law claims when it has dismissed all claims over which it has original jurisdiction, i.e., Plaintiff's § 1983 claims. Se*e* 28 U.S.C. § 1367(c)(3).  Although, here, the Court has determined that some of Plaintiff's constitutional claims against Defendants should survive initial screening, it is possible that they may fail if faced with a motion to dismiss or motion for summary judgment.  In the event that the federal claims over which this Court has original jurisdiction are dismissed, the Court will likely decline to exercise

supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3). Therefore, as federal jurisdiction over Plaintiff's state law claims remains an unsettled issue, the Court finds it unnecessary and inappropriate to reach the merits of such claims at this early stage of the case.

## IV.    Motion for Temporary Restraining Order

Plaintiff has also moved for a temporary restraining order ("TRO"), primarily seeking to restore his visitation privileges (ECF No. 12).   A TRO or preliminary injunction is a drastic remedy used primarily to preserve the status quo rather than grant most or all of the substantive relief sought in the complaint.   *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983); *Fernandez-Roque v. Smith*, 671 F.2d 426, 429 (11th Cir. 1982).[4]  Factors a movant must show to be entitled to a TRO include:  "(1) a substantial likelihood of ultimate success on the merits; (2) the TRO is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the TRO would inflict on the non-movant; and (4) the TRO would serve the public interest."  *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995) (per curiam).

At this juncture the facts have not been sufficiently developed to conclude that there is a substantial likelihood that Plaintiff will ultimately prevail on the merits of his claims. *See S. Monorail Co. v. Robbins & Myers, Inc.*, 666 F.2d 185, 186 (5th Cir. Unit B 1982) ("A preliminary injunction may not issue unless the movant carries the burden of persuasion as to all four prerequisites.").   Instead, the Defendants should be afforded an

---

[4]The standard for obtaining a TRO is the same as the standard for obtaining a preliminary injunction.  *See Windsor v. United States*, 379 F. App'x 912, 916-17 (11th Cir. 2010) (per curiam).

opportunity to respond to Plaintiff's allegations, and any claims for injunctive relief can be addressed as this case proceeds.  Accordingly, it is **RECOMMENDED** that Plaintiff's motion for a temporary restraining order (ECF No. 12) be **DENIED.**

## CONCLUSION

Based on the foregoing analysis, the undersigned **RECOMMENDS** that the following claims be **DISMISSED without prejudice:** (1) Plaintiff's claims regarding punitive isolation; (2) Plaintiff's claims regarding cleanliness and sanitation (including alleged lack of pest control) in his living area; (3) claims regarding his medical treatment, except those claims against Defendant Fowlkes; (4) claims that Defendants failed to assist him in retrieving his medical records and mishandled his medical grievances; and (5) claims against the Georgia Department of Corrections.  The undersigned also **RECOMMENDS** that Plaintiff's motion for temporary restraining order (ECF No. 12) be **DENIED.**

The following claims shall proceed for further factual development (1) denial of visitation claims against Defendants Dendy, Chatman, and Eutsey; (2) denial of out-of-cell time against Defendant Eutsey; and (3) medical deliberate indifference claims against Defendant Fowlkes.  The undersigned also declines to address any of Plaintiff's state law claims at this time.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable C. Ashley Royal, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this

Recommendation.  The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.  Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.  *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against the Defendants identified above, it is accordingly **ORDERED** that service be made on Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.  Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely

dispositive motions as hereinafter directed.  This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.  A party need not serve the opposing party by mail if the opposing party is represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.  If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendants from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.  The deposition of the Plaintiff, a state/county prisoner, may be taken at

22

any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.  This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.  The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:  except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.  No party shall be required to respond to any such

requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

## DIRECTIONS TO CUSTODIAN OF PLAINTIFF

The Warden of the institution wherein Plaintiff is incarcerated, or the Sheriff of any county where he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the Prison Litigation Reform Act, Plaintiff's custodian is authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.

Collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.  As noted above, the Clerk of Court is **DIRECTED** to send a copy of this Order to the business manager at Plaintiff's place of incarceration.

## PLAINTIFF'S OBLIGATION TO PAY FILING FEE

Pursuant to provisions of the Prison Litigation Reform Act, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full; Plaintiff shall continue to remit monthly payments as required by the Prison Litigation Reform Act. Collection from Plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event Plaintiff is released from custody and fails to remit payments.  Plaintiff's Complaint is subject to dismissal if he has the ability to make monthly payments and fails to do so.

**SO ORDERED AND RECOMMENDED**, this 8th day of December, 2015.


s/***Thomas Q. Langstaff***
UNITED STATES MAGISTRATE JUDGE

25