IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CARLTON MICHAEL GARY, | : |
| Plaintiff, | : |
| VS. | : 5: 15-CV-259 (CAR) |
| WARDEN BRUCE CHATMAN, *et al.*, | : |
| Defendants. | : |

**ORDER AND RECOMMENDATION**

**I. Procedural Background**

Plaintiff, proceeding *pro se*, brought the above-styled action pursuant to 42 U.S.C. § 1983 on July 6, 2015.[1] (Doc. 1). In this Court's preliminary review, the undersigned determined that the following claims could proceed for further factual development: (1) denial of visitation against Defendants Dendy, Eutsey, and Chatman; (2) denial of out-of-cell time against Defendant Eutsey; and (3) medical deliberate indifference against Defendant Fowlkes. (Doc. 15). Defendants Chatman, Eutsey, Dendy and Fowlkes filed a Motion to Dismiss on February 8, 2016. (Doc. 29).

This Court notified Plaintiff of the Motion to Dismiss on February 9, 2016, and ordered Plaintiff to respond to the Motion. (Doc. 31). Plaintiff filed his Response on May 2, 2016.[2] (Doc. 36). Defendants replied on May 16, 2016. (Doc. 37).

---

[1] Plaintiff also filed an "Amended Complaint" on September 3, 2015. (Doc. 10).
[2] Plaintiff's Response is eighty pages long. Pursuant to Rule 7.4 of the Local Rules for the Middle District of Georgia, except upon good cause shown and leave given by the Court, all briefs in response to a motion are limited to twenty pages. Plaintiff did not file a written motion within five days of the deadline for filing the brief, specifying the number of pages requested. However, the Court reviewed the entirety of Plaintiff's eighty-page response in preparing this Recommendation.

*Plaintiff's Motion to File Surreply*

On May 25, 2016, Plaintiff effectively filed a Motion to File a Surreply Brief. (Doc. 42). Pursuant to Local Rule 7.3.1, surreply briefs are not favored by the Court. A party desiring to file a surreply brief must do so within fourteen days of the filing of the brief to which the reply is desired, and must succinctly specify reasons why additional briefing is necessary. Plaintiff's Motion is timely. However, this Recommendation addresses only Defendants' "three strikes" argument. As the reasons specified by Plaintiff in his Motion will not aid the Court in ruling on said argument,[3] Plaintiff's Motion is **DENIED**.

## II. Factual Allegations

Plaintiff's claims arise out of his incarceration at the Georgia Diagnostic and Classification Prison (GDCP). (Docs. 1, 10).

**A. Denial of Visitation against Dendy, Eutsey, and Chatman**

On July 4, 2013, Plaintiff was escorted to Defendant Dendy's office, where Defendant Dendy told Plaintiff that he was being moved from segregated housing to punitive isolation. (Doc. 10, pp. 5, 15). Defendant Dendy then told Plaintiff that a correctional officer found marijuana in a mutual area for all visitors and K-building permanent inmates. *Id.* Plaintiff maintains that his daughter and wife were wrongfully accused of bringing marijuana into GDCP. (Doc. 1, p. 15); (Doc. 10, p. 15).

Plaintiff was taken to punitive segregation, where he remained for seventy-four days. (Doc. 1, p. 15); (Doc. 10, p. 17). Plaintiff did not receive a disciplinary report, and Defendant Eutsey told Plaintiff he would be able to talk to internal affairs, but "this never happened." (Doc.

---

[3] Plaintiff argues that he should be able to challenge "the insults hurled upon him by Defendants alleging somehow he misrepresented his pauper status to the Court in a fraudulent[ ] manner, and otherwise duped the Court." (Doc. 42, p. 3). In this Recommendation, the undersigned does not address whether Plaintiff misrepresented his *in forma pauperis* status to the Court and actually possessed adequate funds to pay the filing fee. Instead, the undersigned focuses on whether Plaintiff has accumulated "three strikes," and whether he is able to overcome this barrier through the exception provided in 28 U.S.C. § 1915(g).

2

1, p. 15). Plaintiff was never given a segregation form, hearing, infraction, or disciplinary report. (Doc. 10, p. 16). Plaintiff sent letters to Defendant Chatman "to no avail." (Doc. 1, p. 16). Plaintiff spoke with Defendants Eutsey and Dendy on July 8, 2013, and Plaintiff requested to be allowed to speak to internal affairs. (Doc. 10, p. 17).

A captain told Plaintiff that he could not make any phone calls "per" Defendants Chatman, Eustey, and Dendy. (Doc. 1, pp. 16-17). On May 19, 2015, Plaintiff sent a letter to Defendant Chatman seeking the reinstatement of his wife on Plaintiff's visitation list. (Doc. 1, p. 17). Plaintiff also sent letters to Defendants Eutsey and Chatman asking for internal affairs. (Doc. 10, p. 17).

Plaintiff asserts that he has been denied visitation with his wife and daughter for more than two years, and that Defendants refuse to reinstate no-contact visits with his wife. *Id.* at p. 18. Plaintiff claims that these visitation restrictions were implemented because of Plaintiff's race. *Id.*

**B. Denial of Out-of-cell Time against Eutsey**

Plaintiff has allegedly been denied out-of-cell time for exercise and recreation for the last five years. *Id.* at p. 23. Plaintiff maintains that GDC policy requires at least 2.5 hours of out-of-cell recreation per week. *Id.* at p. 25. Since Defendant Eutsey began working in "G-House," Plaintiff has been denied previously approved out-of-cell time. (Doc. 1, p. 20).

Defendant Eutsey allows Plaintiff out of his cell only for attorney visits, regular visits, religious services, medical, showers three per week, and telephone use. (Doc. 1, p. 20); (Doc. 10, p. 24). Defendant Eutsey implemented a metal cage on part of the recreation yard, but the cage is enclosed on four sides. (Doc. 1, p. 20); (Doc. 10, pp. 24-25). This cage has no heating, air, water, toilet, exercise equipment, or panic button. (Doc. 1, p. 20). Defendant Eutsey has stated several times that he would reconsider Plaintiff's denial of out-of-cell recreation, but Plaintiff has not been allowed out of his cell. *Id.* Plaintiff has filed grievances, written letters, and spoken to

Defendant Eutsey, wardens, and other personnel about the out-of-cell time changes. (Doc. 10, p. 24).

**C. Deliberate Indifference against Defendant Fowlkes**

Plaintiff explained to Defendant Fowlkes that he is allergic to the medication Naproxen. (Doc. 1, p. 21). Plaintiff asked for different medication, but Defendant Fowlkes "refused to do anything." *Id.* at p. 22. Defendant Fowlkes refused to prescribe Neurontin, and refused to provide Plaintiff with other pain medication even though other doctors prescribed such drugs. *Id.* at p. 22; (Doc. 10, pp. 28-29). Over the years, Defendant Fowlkes prescribed Plaintiff medication for his back, feet, and other areas. (Doc. 1, p. 22). Plaintiff suffers from dizziness and blurred vision, which Defendant Fowlkes attributes to Plaintiff's medication. *Id.*

### III. Discussion

Defendants Chatman, Eutsey, Dendy, and Fowlkes argue that (a) Plaintiff's suit must be dismissed because he has three strikes; (b) Plaintiff failed to fully exhaust his administrative remedies; (c) Plaintiff's claims against Defendant Eutsey are barred by the statute of limitations; (d) Plaintiff fails to state a claim on which relief can be granted; (e) prospective relief is not appropriate; and (f) Defendants are entitled to qualified immunity. (Doc. 29-1). The Court need only address Defendants' first argument.

*Three Strikes*

Under the Prison Litigation Reform Act (PLRA),

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding [*in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

4

28 U.S.C.A. § 1915(g). "Under the negative-implication canon, these three grounds are the *only* grounds that can render a dismissal a strike." *Daker v. Comm'r, Ga. Dep't of Corr.*, -- F.3d --, 2016 WL 2342890, at *4 (11th Cir. May 4, 2016).

Defendants maintain that Plaintiff has accumulated "well over three strikes," and is therefore precluded from filing lawsuits *in forma pauperis* unless he is able to demonstrate that he is in imminent danger of a serious physical injury. (Doc. 29-1, pp. 4-5). Plaintiff lists five cases in his Complaint in which he was permitted to proceed *in forma pauperis*, and the suit was subsequently dismissed for being frivolous, malicious, or failing to state a claim. (Doc. 10, p. 3). At least three of these five cases were dismissed for failure to exhaust administrative remedies.[4]

Defendants argue that failure to exhaust administrative remedies counts as a dismissal for failure to state a claim for purposes of § 1915(g). (Doc. 29-1); *Anderson v. Donald*, 261 F. App'x 254, 255 (11th Cir. 2008).[5]

> In *Rivera v. Allin,* the Eleventh Circuit explained that "[a] claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted." 144 F.3d 719, 731 (11th Cir.1998), *abrogated on other grounds by Jones v. Bock,* 549 U.S. 199, 214, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Therefore, a dismissal without prejudice for failure to exhaust counts as a strike under 28 U.S.C. § 1915(g).

*Green v. Lumpkin*, No. 5:15-CV-148-CAR-MSH, 2015 WL 4255874, at *2 (M.D. Ga. July 14, 2015). *See Logan v. Chestnut*, No. 3-09-cv-993, 2011 WL 1419647, at *1 (M.D. Fla. April 13, 2011) ("Plaintiff admitted that he had not exhausted his administrative remedies. It qualifies as a

---

[4] *See Gary v. Hall*, 5:07-CV-149 (CAR); *Gary v. Hall*, 5:08-CV-72 (CAR) (Doc. 6, p. 3) ("Because it is clear from the face of the complaint that plaintiff has not timely and completely exhausted his administrative remedies with regard to his claims prior to initiating this lawsuit, he fails to state a claim upon which relief can be granted."); *Gary v. Owens*, 5:10-CV-61 (MTT).

[5] The Eleventh Circuit explained in *Anderson* that the failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead exhaustion in their complaints. 261 F. App'x at 255. However, a complaint may be dismissed if the affirmative defense of exhaustion appears on the face of the complaint. *Id.*

strike."); *Marlin v. Haynes*, No. CV212-059, 2012 WL 1664160, at *1 n. 1 (S.D. Ga. Apr. 16, 2012), *report and recommendation adopted*, 2012 WL 1664154 (S.D. Ga. May 11, 2012) ("Dismissal of a prior suit for failure to exhaust administrative remedies counts as a strike under § 1915(g).").[6]

In response, Plaintiff explains that he submitted a request to his counselor to "withdraw the balance owed to the Court, $315.83, for full filing fee." (Doc. 36, p. 9) (emphasis in original). Plaintiff asserts that the Court should have the filing fee before "this opposition [ ] by Plaintiff." (Doc. 36, p. 9). It appears that Plaintiff is attempting to pay the remainder of this Court's $350 filing fee in response to Defendants' Motion to Dismiss.

Defendants argue the Court should not allow Plaintiff to pay the filing fee at this time, but should instead dismiss the complaint without prejudice. (Doc. 37).

> [T]he proper procedure is for district courts to dismiss the complaint without prejudice when it denies the prisoner leave to proceed *in forma pauperis* pursuant to the three strikes provision of § 1915(g). The prisoner cannot simply pay the filing fee after being denied *in forma pauperis* status. He must pay the filing fee at the time he *initiates* the suit.

*Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines" that the action or appeal is frivolous, malicious, or fails to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B).

---

[6] *See also Hogan v. Georgia State Prison*, No. CV611-001, 2011 WL 841182, at *1 (S.D. Ga. Feb. 16, 2011), *report and recommendation adopted*, 2011 WL 841173 (S.D. Ga. Mar. 8, 2011) ("A review of Plaintiff's history of filings reveals that he has brought at least three cases that were dismissed and count as strikes under § 1915(g) . . . (3) *Hogan v. Dupree,* CV603–57 (S.D.Ga. Nov. 19, 2003) (dismissed for failure to exhaust administrative remedies)"); *Wright v. E. Point Police Dep't*, No. 1:12-CV-2150-TWT, 2013 WL 4028908, at *2 (N.D. Ga. Aug. 7, 2013) ("The dismissal of a civil rights action for failure to exhaust other remedies counts as a strike under § 1915(g)").

It is clear that Plaintiff has, on at least three occasions while incarcerated, brought an action that was dismissed on the grounds that it failed to state a claim upon which relief may be granted. § 1915(g). However, Plaintiff may still be permitted to bring this action *in forma pauperis* if he shows that he is under imminent danger of serious physical injury.[7] *Id.*

"[T]he issue is whether his complaint, as a whole, alleges imminent danger of serious physical injury." *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004). "The plaintiff must allege and provide specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury, and vague allegations of harm and unspecific references to injury are insufficient." *Jemison v. White*, No. CIV.A. 11-0323-WS-C, 2012 WL 3028061, at *2 (S.D. Ala. June 18, 2012), *report and recommendation adopted*, No. CIV.A. 11-0323-WS-C, 2012 WL 3023491 (S.D. Ala. July 24, 2012) In *Skillern v. Paul*, the Eleventh Circuit reasoned that the district court did not err by dismissing the complaint because

> [u]nlike the prisoner in *Brown,* 387 F.3d at 1346–47, 1349–50, who alleged specific facts about the consequences of being deprived medication for his HIV and hepatitis conditions, appellant merely has alleged that deprivation of his medication *may* result in suffering serious physical injury. He did not present any description of the condition giving rise to his prescription for heart disease medication, and never alleged that he suffered any physical injury as a result of not receiving the medication.

202 F. App'x 343, 344 (11th Cir. 2006).

In his Response, Plaintiff argues that he has demonstrated imminent danger of a serious physical injury because Defendants employed racial discrimination in sanctioning Plaintiff, and because Defendant Fowlkes was notified of Plaintiff's serious medical needs, but did not

---

[7]Plaintiff argues that to meet the requirement of imminent danger of a serious physical injury, the threat and injury "does not need to be so serious as to be an Eighth Amendment violation. A risk of future injury is enough to invoke the imminent danger exception." (Doc. 36, p. 19). However, the statute and case law make clear that the exception applies only in the face of "**imminent** danger of serious **physical** injury." § 1915(g) (emphasis added).

7

respond. (Doc. 36, p. 20). Plaintiff further argues that he continues to be denied out-of-cell time by Defendant Eutsey. (Doc. 36, p. 22).

First, the denial of visitation does not present imminent danger of a serious physical injury. Second, Plaintiff has not alleged specific facts showing that the denial of out-of-cell recreation time presents a likelihood of imminent serious physical injury. *See Smith v. Broome*, No. CV610-101, 2011 WL 2600559, at *1 (S.D. Ga. June 29, 2011) ("Plaintiff does not satisfy the "imminent danger" exception to the statute. Plaintiff states he experiences restless sleep, has lost weight because he has not been eating, and he has not been getting exercise. Though the physical complaints Plaintiff describes might not be pleasant, they in no way indicate that Plaintiff is in imminent danger of serious physical injury."); *Jemison v. White*, No. CIV.A. 11-0323-WS-C, 2012 WL 3028061, at *2 (S.D. Ala. June 18, 2012), *report and recommendation adopted*, No. CIV.A. 11-0323-WS-C, 2012 WL 3023491 (S.D. Ala. July 24, 2012) (dismissing the plaintiff's complaint without prejudice when he complained about the conditions in segregation in a conclusory manner, as "he is not allowed adequate exercise, the cells are unsanitary and have a fecal smell, no hot water is available in the cells, . . . two fans for eighty inmates is inadequate cooling, the ventilation is inadequate, and the eating area is unsanitary.").

Plaintiff alleges that Defendant Eutsey "decided" that Plaintiff can leave his cell for attorney visits, regular visits, religious services, medical, showers, and to use the telephone. (Doc. 1, p. 20); (Doc. 10, p. 24). While Plaintiff claims that his muscles are atrophying and his health is declining because he is not able to leave his cell for recreation (Doc. 36, p. 23), these vague allegations do not present an imminent danger of serious physical injury.

Finally, Plaintiff has not alleged that he is in imminent danger of a serious physical injury resulting from Defendant Fowlkes' alleged misconduct. Plaintiff alleges that Defendant Fowlkes

prescribed him a pain medication to which Plaintiff was allergic, despite being informed of Plaintiff's allergy, and refused to provide him with other pain medications even though other doctors prescribed such drugs. (Docs. 1, 10). However, Plaintiff also claims that he saw a physician's assistant on July 6, 2015, where he was given "name brand" medications, blood and urine tests were ordered, and the physician's assistant arranged for Plaintiff to be seen by a hernia surgeon and urologist. (Doc. 10, pp. 26-27). Plaintiff saw a hernia surgeon and two urologists on July 21, 2015. *Id.* at p. 27. Plaintiff received a prostate exam and prescription pain medication, and a CT-scan was ordered. *Id.* Plaintiff then saw a nurse upon his return to GDCP, and also saw a nurse practitioner on August 6, 2015. *Id.* at pp. 27-28. The nurse practitioner prescribed the medication urologists prescribed for Plaintiff. *Id.*

In response to Defendants' Motion, Plaintiff also maintains that a physician's assistant took Plaintiff off previous medications prescribed by Defendant Fowlkes, prescribed different medications, ordered various medical exams, and made an appointment for a medical examination at Augusta State Medical Prison. (Doc. 36, pp. 20-21). On March 7, 2016, Plaintiff was taken to Augusta State Medical Prison, and he underwent a procedure to remove a mass from his bladder on March 8, 2016. *Id.* at p. 24.

While Plaintiff maintains he has not received the pain medication prescribed by his surgeon (Doc. 10, p. 28), it does not appear that Plaintiff faced an imminent danger of serious physical injury at the time he filed this action. *See Skillern*, 202 F. App'x at 344. This is especially true in light of the treatment Plaintiff *has* received while incarcerated at GDCP.

## IV. Conclusion

As Plaintiff cannot, in accordance with § 1915(g), show that he was under imminent danger of serious physical injury at the time of filing, and Plaintiff did not pay the full filing fee at the time he filed this action, the undersigned recommends that Defendants' Motion to Dismiss

be **GRANTED**, and that his Complaint be dismissed without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. The district judge shall make a de novo determination as to those portions of the Recommendation to which objection is made; all other portions of the Recommendation may be reviewed by the district judge for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED,** this 8th day of June, 2016.

s/ ***THOMAS Q. LANGSTAFF***
**UNITED STATES MAGISTRATE JUDGE**